Kathleen WALKER, Appellant,

v.

The STATE of Texas, Appellee.

No. 44110.

Court of Criminal Appeals of Texas.

Sept. 16, 1971.

Phillip D. Hardberger, San Antonio, for appellant.

Robert J. Seerden, Dist. Atty., and D. F. Martinak, Asst. Dist. Atty., Victoria, and Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

ONION, Presiding Judge.

This appeal arises out of a conviction for possession of marihuana with the punishment being assessed by the jury at two years.

At the outset appellant complains of the admission into evidence of "implicating statements" allegedly made by her for the reason that both were the result of "for and against" warnings.

On the night of May 24, 1970, Hilmer Buske, night manager of an Enco service station located on the Houston highway in Victoria, Texas, observed the appellant acting strangely and saw her go into the parking lot of an adjacent service station and try to open the doors of rental cars parked there. He called the police.

When uniformed Officer George Filley arrived at approximately 8:50 p. m. he observed the appellant attempting to get into passing vehicles on the highway, then saw her "skipping" across the aforesaid parking lot. He was unable to attract her attention and she re-entered the highway, causing several vehicles to come to a stop. When he got to her she talked incoherently and mumbled. Her eyes were dilated and her clothing was disarranged. Filley concluded she was intoxicated and placed her under arrest. He advised her that he was a police officer and gave her warnings sufficient to comply with Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694.

Shortly thereafter while enroute to the police station in the squad car Officer Filley testified, without objection, that appellant suddenly said, "Help me, hide a roach before the cops come," and saw her then drop a rolled cigarette, a matchbook cover and a toothpick to the floorboard of the police vehicle. At the police station Filley recovered these items from the floorboard.

John Burney, Victoria police detective, dressed in mufti, assisted Filley in removing the appellant from the vehicle and taking her to the interview room. Filley left to get a female employee to conduct a search of appellant's person. Burney related that while Filley was absent he told the appellant he was a policeman and warned her of her rights. Shortly thereafter she reached into her brassiere and pulled out a plastic bag containing what appeared to be marihuana and told Burney, "Here, take this. Don't let the pigs have it. I don't want to get busted."

To this testimony there was no objection.

Policewoman Machalec testified, without objection, that a narcotic field test she performed on the cigarette and the substance contained in the plastic bag showed that such items were marihuana.

The chemist from the Department of Public Safety testified he had made a chemical analysis of the substance mailed to him from the Victoria Police Department and determined the same to be marihuana.

Appellant bases her contention as to the "for and against" warnings on the cross-examinations of Officers Filley and Burney.

Although Filley testified on direct examination he had warned the appellant that "anything that she said could and would be used against her in a court of law," the following transpired on cross-examination:

"Q. Are you sure that you ever told her at any point that anything that she said could be used for or against her in this case right here that we are at trial about?

"A. Yes, sir."

Officer Burney, who on direct examination did not detail the warnings he had given, testified on cross-examination:

"Q. Specifically, did you tell her that anything that she was going to say or do could be used for or against her in this at this particular trial?

"A. Yes, sir, I did."

■ It is appellant's basic complaint that such testimony reflects a violation of Miranda and Article 38.22, Vernon's Ann. C.C.P. If, however, the admissibility of the statements or declarations which appellant contends are in the nature of confessions is dependent upon prior and proper warnings, it is observed that at no time did the appellant object to their admission into evidence or request a separate hearing in the jury's absence to determine their admissibility. The statements were admitted after the State had demonstrated that the appellant had been properly warned. Appellant's counsel then interspersed his "for and against" questions among other questions on cross-examination and did not raise any question until the marihuana exhibits were offered after the testimony of the chemist. And even then the objection was that the appellant had not been "properly warned." The trial court's attention was not directed to the cross-examination. If the issue was raised by the officers' testimony, we observe there was no objection to the court's charge or any special requested charge in accordance with Articles 36.14 and 36.15, V.A.C.C.P.

Nothing is presented for review.

■ Further, we are of the opinion that Miranda would have no application for several reasons. Although appellant was in custody, the statements were not made in response to custodial interrogation or questioning. They were volunteered statements. In Miranda the court stated that "[v]olunteered statements *of any kind* are not barred by the Fifth Amendment and their admissibility is not affected by our

holding today." 384 U.S. at 478, 86 S.Ct. at 1630. (emphasis supplied)

Still further, it is noted the complained of statements were made just prior to the appellant's discard of the "roach" in "Officer Filley's presence and contemporaneously with the handing of the plastic bag to Officer Burney.

The record supports the fact that the utterances were excited and spontaneous.

And in Preston v. Commonwealth of Kentucky, 406 S.W.2d 398, the Kentucky Court of Appeals wrote:

"When the utterance of certain words constitutes or is part of the details of an act, occurrence or transaction which in itself is relevant and provable, the utterance may be proved as a verbal act, just as may be a visual observation of an event. This is not hearsay evidence; it is not admitted for the purpose of proving the truth of what was said, but for the purpose of describing the relevant details of what took place. One of the several qualifications for admissibility of this type of statement is that 'the words must be contemporaneous with the conduct, or, in the usual phrase, must accompany the act.' " (Wigmore on Evidence, Sec. 1767, Vol. VI, p. 180.)

Preston was quoted with approval in Ramos v. State, Tex.Cr.App., 419 S.W.2d 359.

In Heath v. State, Tex.Cr.App., 375 S.W.2d 909, it was written that:

"Statements of the appellant though in the nature of a confession, which are a part of the res gestae are admissible though he be under arrest when the statements are made. Fowler v. State, 162 Tex.Cr.R. 513, 287 S.W.2d 665; Lamkin v. State, 136 Tex.Cr.R. 99, 123 S.W.2d 662."

■ And this court has, on several occasions, held that statements which were admissible as a part of the res gestae would

be admissible without the Miranda warnings. Hill v. State, Tex.Cr.App., 420 S. W.2d 408; Fisk v. State, Tex.Cr.App., 432 S.W.2d 912; Spann v. State, Tex.Cr.App., 448 S.W.2d 128; Lucas v. State, Tex.Cr. App., 452 S.W.2d 468. See also People v. O'Neill, 12 Mich.App. 164, 162 N.W.2d 490; People v. Bean, 7 Mich.App. 402, 151 N.W.2d 878.

■ As to Article 38.22, V.A.C.C.P., it is observed that statutory warnings long required for written confessions are not required by such statute for an oral confession leading to the fruits of the crime, and this is the only type of oral confession permitted by the statute. Therefore, if the implicating statements complained of constitute such oral confessions the statute itself does not require any warnings, although Miranda is fully applicable to such oral confessions if the result of custodial interrogation. Lee v. State, Tex.Cr.App., 428 S.W.2d 328.

■ Further, such statute is not applicable to res gestae statements. See Ramos v. State, Tex.Cr.App., 419 S.W.2d 359; Fisk v. State, supra and cases there cited.

It is further observed that Article 38.22, as amended in 1967, expressly provides in Section 1(f) that "[n]othing contained herein shall preclude the admissibility of any statement made by the defendant in open court at his trial or at his examining trial in compliance with Articles 16.03 and 16.04 or of any statement that is res gestae of the arrest or of the offense."

Cases relied upon by the appellant and decided under Article 727 V.A.C.C.P., 1925 (now Article 38.22, supra) do hold that where it is undisputed that a "for and against" warning was given prior to a *written* confession, such confession is inadmissible as a matter of law; and if a disputed fact issue is raised by the evidence offered before the jury, that issue should be submitted to the jury at least where there is a timely presented objection to the

charge or a special requested charge. See, i. e., White v. State, 163 Tex.Cr.R. 77, 289 S.W.2d 279; McCain v. State, 139 Tex. Cr.R. 539, 141 S.W.2d 613.

We do not view these cases as controlling under the circumstances here presented.

Appellant's first contention is without merit.

■ Next appellant complains that the trial court erred in admitting the "contraband marijuana" into evidence because of a break in the proper chain of custody.

Officer Filley recovered the "roach" from the floorboard of his vehicle and retained possession thereof. A short time later he received the plastic bag containing a substance from Policewoman Dryer who had gotten it from Officer Burney only moments before. He promptly initialed and tagged all items of evidence and left such items on a desk in the Evidence Section of the Victoria Police Department at approximately 10:30 p. m. Policewoman Sanchez testified she found such items so tagged on her desk in the Evidence Section when she reported for work at 7:30 o'clock the next morning. The chain of custody was traced to Policewoman Machalec and then to the chemist.

It is appellant's contention that the break in the chain of custody occurred while the items were left unattended on Policewoman Sanchez's desk in the Evidence Section. The record reflects that after 5 p. m. each day until the normal working hours the next day the only access to the Evidence Section was through the Records Section where an officer was on duty at all times. Entry, during such times, to the Record Section was by key after obtaining permission of the officer on duty.

There was no showing that the items had been moved or tampered with or changed in any way. In fact, the contrary appears. While the procedure used is cer-

tainly not to be commended,[1] the items identified as marihuana were not rendered inadmissible thereby. "Appellant's objection for such reason went to the weight rather than the admissibility of the evidence. The exhibits were sufficiently identified at the trial by the witnesses." Wright v. State, Tex.Cr.App., 420 S.W.2d 411, 413. See also Gutierrez v. State, Tex.Cr.App., 422 S.W.2d 467. Cf. Elliott v. State, Tex.Cr.App., 450 S.W.2d 863.

The marihuana was not rendered inadmissible by any break in the chain of custody or by the admission into evidence of the implicating statements.

The judgment is affirmed.

---

1. The testimony reflects that there was an evidence locker or room adjoining the Evidence Section. Only Policewomen Sanchez, Machalec and the Director of Police had keys to such evidence locker. They were not on duty at the time.

It thus appears that Officer Filley had no alternative but to leave the evidence where he did. Good police practice would dictate the use of an overnight evidence locker available to officers on duty after normal working hours.